## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.  18-65681-JWC |
| | ) | |
| CHARLES D. MENSER, JR., | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | |
| | ) | |
| EDWIN K. PALMER as Chapter 7 Trustee for the Estate of CHARLES D. MENSER, JR., | ) ) ) | |
| | ) | ADVERSARY ACTION |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.  _____ |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, PHYLLIS MENSER, 1266 MOORES MILL ROAD, LLC and LOT 710, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### COMPLAINT

COMES NOW Plaintiff Edwin K. Palmer as Chapter 7 Trustee for the Estate of Charles

D. Menser, Jr. ("Plaintiff") who files this Complaint and respectfully shows the following:

### Jurisdiction and Venue

1.

On September 19, 2018 (the "Petition Date") Charles D. Menser, Jr.  ("Debtor") filed his

voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of

Georgia, Atlanta Division, under Case No. 18-656-81.

2.

Jurisdiction of this proceeding is conferred upon this Court pursuant to the provisions of 28 U.S.C. §157 and 28 U.S.C. §1334

3.

This action is a core proceeding pursuant to 28 U.S.C. §§ 157. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 & 1409(a); this proceeding arises from and is related to the Bankruptcy Case.

**Parties**

4.

Plaintiff is the duly qualified and acting trustee authorized to bring this action pursuant to 11 U.S.C. § 323.

5.

Defendant Nationwide Mutual Insurance Company ("Nationwide") is an Ohio corporation, is subject to the jurisdiction of this Court, and may be served care of its registered agent Corporation Service Company, at its registered office 40 Technology Parkway South #300, Norcross, GA 30092.

6.

Defendant Phyllis Menser ("Phyllis") is the spouse of the Debtor, is subject to the jurisdiction of this Court, and may be served at her dwelling house or usual place of abode at 4102 Brookview Drive SE, Atlanta, Georgia 30339.

7.

Defendant Lot 710, LLC is a Georgia limited liability company, is subject to the jurisdiction of this Court, and may be served care of its registered agent, Charles D. Menser, Jr. at 2255 Cumberland Parkway, Building 1600, Suite 150, Atlanta, GA 30339.

8.

Defendant 1266 Moores Mill Road, LLC is a Georgia limited liability company, is subject to the jurisdiction of this Court, and may be served care of its registered agent, Charles D. Menser, Jr. at 2255 Cumberland Parkway, Building 1600, Suite 150, Atlanta, GA 30339.

**Introduction and Overview**

9.

On information and belief, before 1980, Debtor amassed wealth as a Waffle House franchisee in Arkansas, which at its peak included 47 Waffle House locations.  He sold the locations back to Waffle House in 1979 and moved to Atlanta.  It appears that the profit generated from that business success is the original source of funding for the Debtor's many related entities, trusts, and family members and their businesses over the years since.

10.

In addition, the Debtor was directly, or through at least fifty interrelated entities in which he had direct or indirect ownership interests in and/or control of, transferring millions of dollars worth of assets to or for the benefit of Phyllis, his other family members, and those entities with the intent to hinder, delay, and defraud his creditors.  Those transfers resulted in ownership of valuable real estate and other significant assets by people, entities, and trusts *de facto* owned by and/or controlled by the Debtor, but leaving him individually with virtually no assets but with creditors to whom he owes at least $3 million.  These transactions will be set out in detail in a

separate adversary proceeding initiated by the Plaintiff in this bankruptcy case.

11.

Also in his Schedules, the Debtor reports having <u>no</u> interests in any insurance policy.

12.

In fact, as of the Petition Date, the Debtor reports having no interest in any assets of significant value other than a vehicle, $200.00 in a cash, and exempt household goods and furnishings. *See id.*

13.

All of the Debtor's transfers occurred at a time when he was insolvent or became insolvent as a result, as evidenced by his report of virtually no assets on the Petition Date. Among other things, claims filed in his bankruptcy case include debts originating in 2012 (BC35, LLC, Microtel Inns & Suites Franchising, Inc., and First Landmark Bank) and 2013 (Branch Banking & Trust Co.). In 2017, BC35, LLC filed suit against the Debtor to collect on guaranty of St. Mary's LLC unpaid debt of over a million dollars, which resulted in a June 2018 judgment for over $1.4 million. The Debtor made <u>no</u> payments on that judgment before the Petition Date. During the same time period, a group of plaintiffs associated with Archer I, LLLP filed suit for breach of contract against the Debtor and a few Menser Entities in Cobb County Superior Court which resulted in a $3 million consent judgment against him four months before the Petition Date (Alamo Opportunity Fund, LLC, et al. v. Charles D. Menser, Jr., Menser & Co., Stonewall Capital Partners, LLLP, and Archer I GP, LLLP, Civil Action File Number 16-1-7777-56). In addition, the Debtor was also liable on numerous debts which were delinquent for secured properties in which he claimed to have no interest in the actual property, including $314,750.13 to First Landmark Bank guaranteeing a debt

of Building 1600, LLC and $693,276.92 to Suntrust guaranteeing a debt of 100 Oakmont, LLP, as

well as debts of $1,374,851.33 to PNC, and approximately $576,000 to First National Community

Bank, which were also secured by properties that the Debtor claimed he did not own. Finally,

according to a Criticized Asset Report prepared by First Community National Bank on or about

September 1, 2019, the bank denotes a decline in the Debtor's credit score after 2016 because of

past due amounts owed on a home equity line of credit, consistently late monthly mortgage

payments between 2016 and 2017, and a downgrade of the mortgage on the Menser's current

residence due to these issues and his "inability to document cash flow". The Debtor did not have

sufficient assets in his name to even come close to the amount of his debts during the preference

period.

14.

Despite the Debtor's sworn statement that he had no interest in any insurance policies, in

the four-year period preceding the Filing Date and longer, the Debtor's wife, Phyllis Menser, and

Lot 710, LLC owned at least 9 insurance policies with the Defendant Nationwide Mutual Insurance

Company ("Nationwide"), some which were held in the name of the Debtor although the Debtor

alleges in his Petition that he does not own the policies or any of the property that they secure, for

which the Debtor made regular premium payments in an amount totaling at least $31,556.22 (the

"Nationwide Transfers"). *See infra.*

15.

The Debtor's large network of entities and trusts, and the ongoing transfers of the Debtor's

own funds and property to and among them as well as to and among his immediate family

members, all insiders, evidence a pattern and practice of concealment and obfuscation and reveal

the Debtor's fraudulent intent. He left his own creditors unpaid by millions of dollars while enjoying the trappings of a lifestyle funded by wealth he hid in his elaborate scheme.

16.

Just one part of the Debtor's scheme are the Nationwide Transfers:  regular premium payments made by the Debtor on policies he did not own.  As set forth below, these payments were made either by checks the Debtor wrote directly to Nationwide, or checks written to Gross, who in turn wrote checks in identical amounts directly to Nationwide.  On information and belief, none of the purported owners of the policies provided any consideration to the Debtor for the payments.

**Premium Payments on Nationwide Auto Policy**

17.

The Debtor made payments on a Nationwide insurance policy no. 7710C363435 ("Auto Policy") for a 2003 Mercedes Benz S500, VIN WDBNG75J83A328047 ("Mercedes").

18.

The Debtor is not an owner or a lesser of the Mercedes, as evidenced by his Schedules filed in this case.

19.

In the four-year period preceding the Petition Date, the Debtor made premium payments to Nationwide for the Auto Policy in the total amount of $9,530.99 as follows:

| NATIONWIDE POLICY #7710C363435 | | |
|---|---|---|

| Check No. and Source | Check Date | Amount |
|---|---|---|
| Charles Menser<br><br>Check Number 5471 | 12/10/2014 | $232.02 |
| Charles Menser<br><br>Suntrust Check<br><br>#6129 | 2/2/2015 | $222.01 |
| Charles Menser<br><br>Check  Number 6165 | 3/11/2015 | $222.02 |
| Charles Menser<br><br>Check Number 6183 | 3/23/2015 | $232.01 |
| Charles Menser<br><br>Check Number 6197 | 4/10/2015 | $210.08 |
| Charles Menser<br>Check Number 6254 | 5/28/2015 | $215.08 |
| Charles Menser<br><br>Check Number 6278 | 6/15/2015 | $215.09 |
| Charles Menser<br><br>Check Number 6297 | 7/20/2015 | $215.08 |
| Charles Menser<br><br>Check Number 6337 | 8/8/2015 | $215.08 |

| | | |
|---|---|---|
| Charles Menser<br>Check Number 6354 | 9/11/2015 | $435.17 |
| Charles Menser<br>Check Number 6396 | 10/1/2015 | $225.09 |
| Charles Menser<br>Check Number 6416 | 10/7/2015 | $230.97 |
| Charles Menser<br>Check Number 6493 | 12/22/2015 | $236.19 |
| Charles Menser<br>Check Number 6640 | 4/22/2016 | $182.13 |
| Charles Menser<br>Check Number 6670 | 5/18/2016 | $187.13 |
| Charles Menser<br>Check Number 6744 | 8/19/2016 | $202.14 |
| Charles Menser<br>Check Number 6809 | 11/9/2016 | $206.23 |
| Charles Menser<br>Check Number 5681 | 11/19/2016 | $211.23 |
| Charles Menser<br>Check Number 6857 | 2/21/2017 | $542.77 |
| Charles Menser<br>Check Number 6871 | 3/2/2017 | $542.77 |

| | | |
|---|---|---|
| Charles Menser<br><br>Check Number 7064 | 6/26/2017 | $821.24 |
| Charles Menser<br><br>Check Number 7095 | 8/1/2017 | $821.23 |
| Charles Menser<br><br>Check Number 7129 | 9/1/2017 | $836.24 |
| Charles Menser<br><br>Check Number 7212 | 11/16/2017 | $873.03 |
| Charles Menser<br><br>Check Number 193 | 12/5/2017 | $106.42 |
| Charles Menser<br><br>Check Number 6941 | 1/19/2018 | $892.54 |

## COUNT I:  AVOIDANCE OF FOUR-YEAR NATIONWIDE TRANSFERS FOR AUTO POLICY UNDER
### O.C.G.A. §18-2-70 et seq. and 11 U.S.C. §544

20.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 18 herein and the same are incorporated in Count I by this reference.

21.

During the four-year period prior to the Filing Date, the Debtor made payments to Nationwide  in the total amount of $9,530.99, for the benefit of the Auto policy as described above.

22.

At the time of the Nationwide Transfers for Auto Policy, the Debtor was insolvent due to the sum of the Debtor's debts far exceeding the sum of the Debtor's property.  For example, creditor Microtel Inns & Suites Franchising, Inc. filed a proof of claim in the Debtor's case for $81,173.63 based on a 2012 note and additional debt accrued in 2016 and 2017.  *See* Proof of Claim No. 1.  Creditor Branch Bank & Trust Company filed a claim for $497,771.94 based on a 2013 loan.  *See* Proof of Claim No. 2.  BC35, LLC filed a claim for $1,482,976.05 based on a June 2018 judgment in its lawsuit against the Debtor for amounts owed on loans.  The creditor included in his Schedules debts to thirty-five different creditors totaling $2,731,943.78 as of the Petition Date. All of the Debtor's transfers occurred at a time when he was insolvent or became insolvent as a result, as evidenced by his report of virtually no assets on the Petition Date.  Among other things, claims filed in his bankruptcy case include debts originating in 2012 (BC35, LLC, Microtel Inns & Suites Franchising, Inc., and First Landmark Bank) and 2013 (Branch Banking & Trust Co.).  In 2017, BC35, LLC filed suit against the Debtor to collect on guaranty of St. Mary's LLC unpaid debt of over a million dollars, which resulted in a June 2018 judgment for over $1.4 million.  The Debtor made <u>no</u> payments on that judgment before the Petition Date.  During the same time period, a group of plaintiffs associated with Archer I, LLLP filed suit for breach of contract against the Debtor and a few Menser Entities in Cobb County Superior Court which resulted in a $3 million consent judgment against him four months before the Petition Date (Alamo Opportunity Fund, LLC, et al. v. Charles D. Menser, Jr., Menser & Co., Stonewall Capital Partners, LLLP, and Archer I GP, LLLP, Civil Action File Number 16-1-7777-56).  In addition, the Debtor was also liable on numerous debts which were delinquent for secured properties in which he claimed to have no interest in the actual property, including $314,750.13 to First Landmark Bank guaranteeing a debt

of Building 1600, LLC and $693,276.92 to Suntrust guaranteeing a debt of 100 Oakmont, LLP, as

well as debts of $1,374,851.33 to PNC, and approximately $576,000 to First National Community

Bank, which were also secured by properties that the Debtor claimed he did not own. Finally,

according to a Criticized Asset Report prepared by First Community National Bank on or about

September 1, 2019, the bank denotes a decline in the Debtor's credit score after 2016 because of

past due amounts owed on a home equity line of credit, consistently late monthly mortgage

payments between 2016 and 2017, and a downgrade of the mortgage on the Menser's current

residence due to these issues and his "inability to document cash flow". The Debtor listed only

nominal assets in a no-asset Chapter 7 bankruptcy, and did not have sufficient assets in his name

to satisfy the above claims during the time period of the Nationwide Transfers For Auto Policy .

23.

Debtor made the Nationwide Transfers for Auto Policy with actual intent to hinder, delay,

or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the

following:

(b)     Through paying Nationwide for the Auto Policy, Debtor made the Nationwide Transfers
for Auto Policy, yet maintained control of his funds while protecting those funds and property
from his creditors;

(c)     Nationwide did not provide consideration to the Debtor for the Nationwide Transfers for
Auto Policy;

(d)     Phyllis Menser also provided no consideration to the Debtor for the Nationwide Transfers
for Auto Policy; and

(e)     The Nationwide Transfers for Auto Policy enabled Debtor to remove or conceal his own
assets by converting them into assets outside the reach of his creditors, namely the Spousal Trust
Policies.

24.

The Debtor made the Nationwide Transfers for Auto Policy without receiving a reasonably equivalent value in exchange for the Nationwide Transfers for Auto Policy and at the time of the transfers, Debtor

(a)    was insolvent or became insolvent as a result of the transfers;

(b)    was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)    intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

25.

Transfers to Defendant Nationwide were for obligations of another entity.  Nationwide knew or should have known that the transfers were fraudulent as the Debtor did not own the Mercedes.

26.

To the extent that Nationwide accepted payment from Debtor based upon the Mercedes owned by another, Nationwide did not act in good faith.  Rather, Nationwide had knowledge of the source of payments as they were rendered.

27.

The Trustee has the standing of a creditor holding a judgment against the Debtor (11 U.S.C. §544(a)) and the Nationwide Transfers For Auto Policy are voidable under O.C.G.A. §18-2-74 (a) and (b) as transfers avoidable by creditors sharing the statutory standing of the Trustee (11 U.S.C. §544(b)).   Defendant Nationwide is initial transferee, or in the alternative as to certain of the transfers, Defendant Nationwide is the transferee,  and in all aspects Defendant Phyllis Menser is the person for whose benefit the Nationwide Transfers For Auto Policy  were made.  As such, the Plaintiff is entitled to recover the value of the transfers from Nationwide and from Phyllis

Menser in an amount of at least $9,530.99 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

## COUNT II:  AVOIDANCE OF TWO YEAR NATIONWIDE TRANSFERS FOR AUTO POLICY UNDER §548

28.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 27 herein and the same are incorporated in Count II by this reference.

29.

During the two-year period prior to the Filing Date, the Debtor made payments to Nationwide in the total amount of $5,853.70, for the benefit of the Auto Policy.

30.

At the time of the Nationwide Transfers For Auto Policy, the Debtor was insolvent due to the sum of the Debtor's debts far exceeding the sum of the Debtor's property.  For example, creditor Microtel Inns & Suites Franchising, Inc. filed a proof of claim in the Debtor's case for $81,173.63 based on a 2012 note and additional debt accrued in 2016 and 2017.  *See* Proof of Claim No. 1.  Creditor Branch Bank & Trust Company filed a claim for $497,771.94 based on a 2013 loan.  *See* Proof of Claim No. 2.  BC35, LLC filed a claim for $1,482,976.05 based on a June 2018 judgment in its lawsuit against the Debtor for amounts owed on loans.  The creditor included in his Schedules debts to thirty-five different creditors totaling $2,731,943.78 as of the Petition Date. All of the Debtor's transfers occurred at a time when he was insolvent or became insolvent as a result, as evidenced by his report of virtually no assets on the Petition Date.  Among other things, claims filed in his bankruptcy case include debts originating in 2012 (BC35, LLC, Microtel Inns & Suites Franchising, Inc., and First Landmark Bank) and 2013 (Branch Banking & Trust

Co.).  In 2017, BC35, LLC filed suit against the Debtor to collect on guaranty of St. Mary's LLC unpaid debt of over a million dollars, which resulted in a June 2018 judgment for over $1.4 million. The Debtor made <u>no</u> payments on that judgment before the Petition Date.  During the same time period, a group of plaintiffs associated with Archer I, LLLP filed suit for breach of contract against the Debtor and a few Menser Entities in Cobb County Superior Court which resulted in a $3 million consent judgment against him four months before the Petition Date (Alamo Opportunity Fund, LLC, et al. v. Charles D. Menser, Jr., Menser & Co., Stonewall Capital Partners, LLLP, and Archer I GP, LLLP, Civil Action File Number 16-1-7777-56).  In addition, the Debtor was also liable on numerous debts which were delinquent for secured properties in which he claimed to have no interest in the actual property, including $314,750.13 to First Landmark Bank guaranteeing a debt of Building 1600, LLC and $693,276.92 to Suntrust guaranteeing a debt of 100 Oakmont, LLP, as well as debts of $1,374,851.33 to PNC, and approximately $576,000 to First National Community Bank, which were also secured by properties that the Debtor claimed he did not own. Finally, according to a Criticized Asset Report prepared by First Community National Bank on or about September 1, 2019, the bank denotes a decline in the Debtor's credit score after 2016 because of past due amounts owed on a home equity line of credit, consistently late monthly mortgage payments between 2016 and 2017, and a downgrade of the mortgage on the Menser's current residence due to these issues and his "inability to document cash flow". The Debtor listed only nominal assets in a no-asset Chapter 7 bankruptcy, and did not have sufficient assets in his name to satisfy the above claims during the time period of the Nationwide Transfers For Auto Policy .

31.

Debtor made the Nationwide Transfers For Auto Policy with actual intent to hinder, delay,

or defraud Debtor's creditors, which was the foreseeable outcome of the Debtor's conduct.

Evidence of Debtor's actual intent includes, without limitation, the following:

(a)    The Nationwide Transfers For Auto Policy were made for the benefit of Phyllis Menser and used to conceal the Debtor's assets;

(b)    Debtor made the Nationwide Transfers For Auto Policy, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)    Neither Nationwide or Phyllis Menser provided consideration to the Debtor for the Nationwide Transfers For Auto Policy;

(d)    The Nationwide Transfers For Auto Policy enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors.

32.

The Debtor made the Nationwide Transfers For Auto Policy without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Auto Policy  and at the time of the transfers, Debtor

(a)    was insolvent or became insolvent as a result of the transfers;

(b)    was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)    intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

33.

The Nationwide Transfers For Auto Policy made within the two year period preceding the Petition Date are voidable pursuant to 11 U.S.C. §548. Defendant Nationwide is transferee and Defendant Phyllis MEnser is the person for whose benefit the Nationwide Transfers For Auto Policy  were made.  As such, pursuant to 11 U.S.C. §550, the Plaintiff is entitled to recover the value of those transfers from Nationwide and from Phyllis Menser in an amount of at least

$5,853.70 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

**Premium Payments for Homeowner Insurance on 1401 Garmon**

34.

The Debtor made payments on a Nationwide insurance homeowners policy nos. 7710HP221970 ("1401 Garmon Policy") which insured that certain residence located at 1401 Garmon Ferry Road NW, Atlanta, GA 30327 ("1401 Garmon Property").

35.

The Debtor was not an owner of the 1401 Garmon Property-instead, same was held in the name of Phyllis Menser.

36.

In the four-year period preceding the Petition Date, the Debtor made premium payments to Nationwide for the 1401 Garmon Policy in the total amount of $10,984.92 as follows:

| NATIONWIDE POLICY 7710HP221970 | | |
| --- | --- | --- |
| | | |
| Check No. | Check Date | Amount |
| 5323 | 10/1/2014 | $327.42 |
| 5352 | 10/21/2014 | $337.42 |
| 5378 | 11/13/2014 | $327.41 |
| 5475 | 12/10/2014 | $371.75 |

| | | |
|---|---|---|
| 6121 | 2/1/2015 | $386.75 |
| 6158 | 3/2/2015 | $376.75 |
| 6184 | 3/23/2015 | $386.75 |
| 6211 | 5/1/2015 | $376.75 |
| 6250 | 5/26/2015 | $376.75 |
| 6276 | 6/15/2015 | $376.75 |
| 6298 | 7/20/2015 | $376.75 |
| 6356 | 9/11/2015 | $386.75 |
| 6395 | 10/1/2015 | $386.75 |
| 6413 | 10/7/2015 | $376.75 |
| 6450 | 11/23/2015 | $376.75 |
| 6492 | 12/22/2015 | $429.08 |
| 6527 | 1/28/2016 | $449.08 |
| 6573 | 2/29/2016 | $434.08 |
| 6601 | 3/16/2016 | $434.08 |
| 6641 | 4/22/2016 | $434.08 |
| 6673 | 5/18/2016 | $434.09 |
| 6707 | 6/27/2016 | $434.92 |
| 6727 | 8/1/2016 | $449.92 |
| 6739 | 8/19/2016 | $449.92 |
| 6778 | 9/28/2016 | $449.92 |

| 6808 | 11/9/2016 | $429.92 |
| 6870 | 3/2/2017 | $607.58 |

## COUNT III:  AVOIDANCE OF FOUR-YEAR NATIONWIDE TRANSFERS FOR GARMON UNDER
### O.C.G.A. §18-2-70 et seq. and 11 U.S.C. §544

37.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1. through 36 herein and the same are incorporated in Count III by this reference.

38.

During the four-year period prior to the Filing Date, the Debtor made premium payments to Nationwide, in the total amount of $10,984.92, for the 1401 Garmon Policy (the "Nationwide Transfers For Garmon"), as described above.

39.

The Debtor was insolvent at the time he made the Nationwide Transfers For Garmon, as detailed above.

40.

Debtor made the Nationwide Transfers For Garmon with actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)    The Nationwide Transfers For Garmon were made for the benefit of Phyllis Menser, the spouse and an insider of the Debtor;

(b)    Through Nationwide and Phyllis, Debtor made the Nationwide Transfers For Garmon, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)    Neither Nationwide nor Phyllis provided consideration to the Debtor for the Nationwide

Transfers For Garmon;

(d)     The Nationwide Transfers For Garmon enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the 1401 Garmon Property.

41.

The Debtor made the Nationwide Transfers For Garmon without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Garmon and at the time of the transfers, Debtor

(a)     was insolvent or became insolvent as a result of the transfers;

(b)     was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)     intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

42.

Transfers to Defendant Nationwide for the Garmon Policy were for the insurance of property owned by Phyllis Menser.  Nationwide knew or should have known that the transfers were fraudulent as the Debtor had no ownership interest in the Garmon Property.

43.

To the extent that Nationwide accepted payment from Debtor based upon insurance for property owned by another, Nationwide did not act in good faith.  Rather, Nationwide had knowledge of the source of payments as they were rendered.

44.

The Trustee has the standing of a creditor holding a judgment against the Debtor (11 U.S.C. §544(a)) and the Nationwide Transfers For Garmon are voidable under  O.C.G.A. §18-2-74 (a)

and (b) as transfers avoidable by creditors sharing the statutory standing of the Trustee (11 U.S.C. §544(b)).   Defendant Nationwide is initial transferee, or in the alternative as to certain of the transfers, Defendant Nationwide is the transferee,   and in all aspects, Phyllis is the person for whose benefit the Nationwide Transfers For Garmon were made – As such, the Plaintiff is entitled to recover the value of those transfers from Nationwide and from Phyllis in an amount of at least $10,984.92 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

## COUNT IV:  AVOIDANCE OF TWO-YEAR NATIONWIDE TRANSFERS FOR GARMON UNDER §548

43.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 44 herein and the same are incorporated in Count V by this reference.

44.

During the two-year period prior to the Filing Date, the Debtor made premium payments on the Garmon Policy to Nationwide in the total amount of $1,487.42, for the benefit of Phyllis.

45.

At the time of the Nationwide Transfers For Garmon, the Debtor was insolvent as detailed above.

46.

Debtor made the Nationwide Transfers For Garmon with actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)         The Nationwide Transfers For Garmon were made for the benefit of Phyllis, the

spouse and an insider of the Debtor;

(b)          Through Nationwide and Phyllis, Debtor made the Nationwide Transfers For Garmon, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)          Nationwide provided no consideration to the Debtor for the Nationwide Transfers For Garmon;

(d)          Phyllis provided no consideration to the Debtor for the Nationwide Transfers For Garmon; and

(e)          The Nationwide Transfers For Garmon enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the Garmon Property.

47.

The Debtor made the Nationwide Transfers For Garmon without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Garmon and at the time of the transfers, Debtor

(a)      was insolvent or became insolvent as a result of the transfers;

(b)      was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)      intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

48.

The Nationwide Transfers For Garmon are voidable pursuant to 11 U.S.C. §548. Defendant Nationwide is initial transferee, or in the alternative as to certain of the transfers, Defendant Gross is the initial transferee and Defendant Nationwide is the subsequent transferee, and in all aspects the Defendant Phyllis is the person for whose benefit the Nationwide Transfers For Garmon were made, such that pursuant to 11 U.S.C. §550(a), the Plaintiff is entitled to recover the value of those

transfers from Nationwide and from Phyllis in an amount of at least $1,487.42 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

**Premium Payments on Nationwide Policies Insuring Rabun Property**

48a.

The Debtor made payments on a Nationwide insurance homeowners policy nos. 7710HP221971 and 7757753867 ("994 Burton Policies") which insured that certain residence located at 994 Burton Mountain Road, Clarkesville, Georgia 30523 ("994 Burton Property").

49.

The Debtor was not an owner of the 994 Burton Property-instead, same was held in the name of Defendant Lot 710, LLC ("Lot 710"), a limited liability company allegedly 99% owned by Defendant Phyllis Menser.

50.

In the four-year period preceding the Petition Date, the Debtor made premium payments to Nationwide for the 994 Burton Policies in the total amount of $6,652.98 as follows:

| NATIONWIDE POLICY 7710HP221971 | | |
|---|---|---|
| | | |
| Check No. | Check Date | Amount |
| 5329 | 10/1/2014 | $152.75 |
| 9/30 | 10/15/2014 | $152.75 |

| | | |
|---|---|---|
| 5351 | 10/21/2014 | $162.75 |
| 5377 | 11/13/2014 | **$152.75** |
| 5474 | 12/10/2014 | $181.17 |
| 6122 | 2/1/2015 | $196.17 |
| 6159 | 3/2/2015 | $186.17 |
| 6176 | 3/23/2015 | $196.17 |
| 6209 | 5/1/2015 | $186.17 |
| 6249 | 5/26/2015 | $186.16 |
| 6275 | 6/15/2015 | $186.17 |
| 6296 | 7/20/2015 | $186.16 |
| 6353 | 9/11/2015 | $196.17 |
| 6393 | 10/1/2015 | $196.16 |
| 6414 | 10/7/2015 | $186.17 |
| 6451 | 11/23/2015 | $186.16 |
| 6490 | 12/22/2015 | $215.58 |
| 6529 | 1/28/2016 | $235.58 |
| 6572 | 2/29/2016 | $220.58 |
| 6619 | 4/4/2016 | $220.58 |
| 6644 | 4/22/2016 | $220.58 |
| 6674 | 5/18/2016 | $220.59 |
| 6711 | 6/27/2016 | $235.59 |

| 6729 | 8/1/2016 | $235.58 |
|------|----------|---------|
| 6745 | 8/19/2016 | $235.58 |
| 6775 | 9/28/2016 | $235.59 |
| 6807 | 11/9/2016 | $235.59 |
| 6869 | 3/2/2017 | $321.02 |
| 7083 | 7/6/2017 | $318.52 |
| NATIONWIDE POLICY 7757753867 | | |
| Check No. | Check Date | Amount |
| 7039 | 5/8/2017 | $5.00 |
| 7063 | 6/26/2017 | $303.51 |
| 7102 | 8/2/2017 | $303.51 |

(the "Nationwide Transfers For 994 Burton").

### COUNT V:  AVOIDANCE OF FOUR-YEAR NATIONWIDE TRANSFERS FOR 994 BURTON UNDER O.C.G.A. §18-2-70 et seq. and 11 U.S.C. §544

50.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 49 herein and the same are incorporated in Count VI by this reference.

51.

During the four-year period prior to the Filing Date, the Debtor made premium payments to Nationwide on the 994 Burton Policies in the total amount of $6,652.98, for the benefit of the Lot 710.

52.

At the time of the Nationwide Transfers For 994 Burton, the Debtor was insolvent.

53.

Debtor made the Nationwide Transfers For 994 Burton with actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)     The Nationwide Transfers For 994 Burton were made for the benefit of Lot 710 and Defendant Phyllis Menser to conceal assets of the Debtor;

(b)     Through Nationwide and the Lot 710, Debtor made the Nationwide Transfers for 994 Burton, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)     Nationwide provided no consideration to the Debtor for the Nationwide Transfers for 994 Burton;

(d)     Lot 710 and Phyllis Menser provided no consideration to the Debtor for the Nationwide Transfers for 994 Burton; and

(e)     The Nationwide Transfers For 994 Burton enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the 994 Burton Property.

54.

The Debtor made the Nationwide Transfers For 994 Burton without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For 994 Burton and at the time of the transfers, Debtor

(a)     was insolvent or became insolvent as a result of the transfers;

(b)    was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)    intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

55.

Transfers to Defendant Nationwide were for obligations of another entity.  Nationwide knew or should have known that the transfers were fraudulent as the Debtor had no ownership interest in the 994 Burton Property.

56.

To the extent that Nationwide accepted payment from Debtor based upon debt owed by another, Nationwide did not act in good faith.  Rather, Nationwide had knowledge of the source of payments as they were rendered.

57.

The Trustee has the standing of a creditor holding a judgment against the Debtor (11 U.S.C. §544(a)) and the Nationwide Transfers For 994 Burton are voidable under O.C.G.A. §18-2-74 (a) and (b) as transfers avoidable by creditors sharing the statutory standing of the Trustee (11 U.S.C. §544(b)).  Defendant Nationwide is initial transferee and Defendants Lot 710 and Phyllis Menser is the person for whose benefit the Nationwide Transfers For 994 Burton were made, such that the Plaintiff is entitled to recover the value of those transfers from Nationwide and from the Lot 710 in an amount of at least $6,652.98, as well as pre-judgment interest from the date of the filing of this Complaint.

**COUNT VI:  AVOIDANCE OF TWO-YEAR NATIONWIDE
TRANSFERS FOR 994 BURTON UNDER §548**

58.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 57 herein and

the same are incorporated in Count VI by this reference.

59.

During the two-year period prior to the Filing Date, the Debtor made premium payments to

Nationwide in the total amount of $1,404.22, for the benefit of Lot 710.

60.

At the time of the Nationwide Transfers for 994 Burton, the Debtor was insolvent.

61.

Debtor made the Nationwide Transfers For 994 Burton with actual intent to hinder,

delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without

limitation, the following:

(a)     The Nationwide Transfers For 994 Burton were made for the benefit of Lot 710 Defendant
Phyllis Menser to conceal assets of the Debtor;

(b)     Through Nationwide and the Lot 710, Debtor made the Nationwide Transfers for 994
Burton, yet maintained control of his funds while protecting those funds and property from his
creditors;

(c)     Nationwide provided no consideration to the Debtor for the Nationwide Transfers for 994
Burton;

(d)     Lot 710 provided no consideration to the Debtor for the Nationwide Transfers for 994
Burton; and

(e)     The Nationwide Transfers For 994 Burton enabled Debtor to remove or conceal his own
assets by converting them into assets outside the reach of his creditors, namely the 994 Burton
Property.

62.

The Debtor made the Nationwide Transfers For 994 Burton without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For 994 Burton and at the time of the transfers, Debtor

(a)     was insolvent or became insolvent as a result of the transfers;

(b)     was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)     intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

63.

The Nationwide Transfers For 994 Burton are voidable pursuant to 11 U.S.C. §548. Defendant Nationwide is initial transferee and Defendant Lot 710 is the person for whose benefit the Nationwide Transfers For 994 Burton were made, such that pursuant to 11 U.S.C. §550(a), the Plaintiff is entitled to recover the value of those transfers from Nationwide and from Lot 710 and Phyllis Menser in an amount of at least $1,404.22, as well as pre-judgment interest from the date of the filing of this Complaint.

**Premium Payments On Nationwide Policy for 4102 Brookview**

64.

The Debtor made payments on a Nationwide insurance homeowner policy no. 7710HP495469 ("4102 Brookview Policy") which insured that certain residence located at 4102 Brookview Drive, SE Atlanta, GA 30339 ("Brookview Property").

65.

The Debtor was not an owner of the Brookview Property-instead, during the relevant preference period, same was held in the name of Defendant 1266 Moores Mill Road, LLC ("Lot 710"), a

limited liability company allegedly 99% owned by Defendant Phyllis Menser, and by Defendant

Phyllis Menser.

66.

In the four-year period preceding the Petition Date, the Debtor made premium payments

to Nationwide for the 4102 Brookview Policy in the total amount of $1,860.06 as follows:

| NATIONWIDE POLICY 7710HP495469 | | |
|---|---|---|
| | | |
| Check No. | Check Date | Amount |
| 6289 | 7/6/2015 | $149.16 |
| 6756 | 8/29/2016 | $0.00 |
| 6761 | 8/30/2016 | $154.17 |
| 6780 | 9/28/2016 | $154.17 |
| 6856 | 2/21/2017 | $153.45 |
| 7061 | 6/21/2017 | $415.92 |
| 7075 | 7/6/2017 | $410.11 |
| 7080 | 7/6/2017 | $121.42 |
| 7081 | 7/6/2017 | $0.00 |
| 7082 | 7/6/2017 | $148.33 |
| 7105 | 8/2/2017 | $153.33 |

(the "Nationwide Transfers For Brookview").

## COUNT VII:  AVOIDANCE OF FOUR-YEAR NATIONWIDE TRANSFERS FOR BROOKVIEW UNDER O.C.G.A. §18-2-70 et seq. and 11 U.S.C. §544

67.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 83 herein and the same are incorporated in Count VII by this reference.

68.

During the four-year period prior to the Filing Date, the Debtor made premium payments to Nationwide, in the total amount of $1,860.06, for the benefit of the 1266 Moores Mill and Phyllis Menser.

69.

At the time of the Nationwide Transfers For Brookview, the Debtor was insolvent.

70.

Debtor made the Nationwide Transfers For Brookview with actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)      The Nationwide Transfers For Brookview were made for the benefit of 1266 Moores Mill Road, LLC and Phyllis Menser to conceal assets of the Debtor;

(b)      Through Nationwide, 1266 Moores Mill Road, LLC and Phyllis Menser Debtor made the Nationwide Transfers For Brookview, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)      Nationwide did not provide consideration to the Debtor for the Nationwide Transfers For Brookview;

(d)      Defendants 1266 Moores Mill Road, LLC and Phyllis Menser also provided no consideration to the Debtor for the Nationwide Transfers For Brookview; and

(e)      The Nationwide Transfers For Brookview enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the Brookview Property.

71.

The Debtor made the Nationwide Transfers For Brookview without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Brookview and at the time of the transfers, Debtor

(a)      was insolvent or became insolvent as a result of the transfers;

(b)      was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)      intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

72.

Transfers to Defendant Nationwide were for obligations of another entity.  Nationwide knew or should have known that the transfers were fraudulent as the Debtor had no title ownership interest in the Brookview Property.

73.

To the extent that Nationwide accepted payment from Debtor based upon debt owed by another, Nationwide did not act in good faith.  Rather, Nationwide had knowledge of the source of payments as they were rendered.

74.

The Trustee has the standing of a creditor holding a judgment against the Debtor (11 U.S.C. §544(a)) and the Nationwide Transfers For Brookview are voidable under  O.C.G.A. §18-2-74 (a) and (b) as transfers avoidable by creditors sharing the statutory standing of the Trustee (11 U.S.C.

§544(b)).   Defendant Nationwide is transferee  and in all aspects Defendants 1266 Moores Mille

Road and Phyllis Menser are the person and entity for whose benefit the Nationwide Transfers For

Brookview were made.  As such, the Plaintiff is entitled to recover the value of those transfers

from Nationwide and from Defendants Phyllis Menser and 1266 Moores Mill Road, LLC in an

amount of at least $1,860.06 (or amounts to be determined with more certainty at trial), as well as

pre-judgment interest from the date of the filing of this Complaint.

## <u>COUNT VIII:  AVOIDANCE OF TWO-YEAR NATIONWIDE TRANSFERS FOR BROOKVIEW UNDER §548</u>

75.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 74 herein and

the same are incorporated in Count VIII by this reference.

76.

During the two-year period prior to the Filing Date, the Debtor made premium payments to

Nationwide for the Brookview Policy, in the total amount of $1,556.73, for the benefit of

Defendants 1266 Moores Mill Road, LLC and Phyllis Menser.

77.

At the time of the Nationwide Transfers For Brookview, the Debtor was insolvent.

78.

Debtor made the Nationwide Transfers For Brookview with actual intent to hinder,

delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without

limitation, the following:

(a)      The Nationwide Transfers For Brookview were made for the benefit of 1266 Moores Mill
Road, LLC and Phyllis Menser to conceal assets of the Debtor;

(b)      Through Nationwide, 1266 Moores Mill Road, LLC and Phyllis Menser Debtor made the Nationwide Transfers For Brookview, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)      Nationwide did not provide consideration to the Debtor for the Nationwide Transfers For Brookview;

(d)      Defendants 1266 Moores Mill Road, LLC and Phyllis Menser also provided no consideration to the Debtor for the Nationwide Transfers For Brookview; and

(e)      The Nationwide Transfers For Brookview enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the Brookview Property.

79.

The Debtor made the Nationwide Transfers For Brookview without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Brookview and at the time of the transfers, Debtor

(a)      was insolvent or became insolvent as a result of the transfers;

(b)      was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)      intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

80.

The Nationwide Transfers For Brookview made within the two year period preceding the Petition Date are voidable pursuant to 11 U.S.C. §548. Defendant Nationwide is transferee and in all aspects Defendants 1266 Moores Mill Road, LLC and Phyllis Menser are the person and entity for whose benefit the Nationwide Transfers For Brookview were made, such that pursuant to 11 U.S.C. §550(a), the Plaintiff is entitled to recover the value of those transfers from Nationwide

and/or 1266 Moores Mill Road, LLC and Phyllis Menser in an amount of at least $1,556.73 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

**Premium Payments On Nationwide Jewelry and Furs Policy**

81.

The Debtor made payments on a Nationwide insurance policy no. 7710M166273 ("Jewelry and Furs Policy") which insured that certain jewelry and furs valued at $101,324.00 ("Jewelry and Furs").

82.

The Debtor has alleged in his petition that he does not own any such jewelry or furs.

83.

In the four-year period preceding the Petition Date, the Debtor made premium payments to Nationwide for the Jewelry and Furs Policy in the total amount of $2,527.57 as follows:

| NATIONWIDE POLICY 7710HP495469 | | |
|---|---|---|
| | | |
| Check No. | Check Date | Amount |
| 5326 | 10/1/2014 | $101.42 |
| 5376 | 11/13/2014 | $101.41 |
| 5472 | 12/10/2014 | $101.41 |
| 6120 | 2/1/2015 | $116.42 |

| 6160 | 3/2/2015 | $106.42 |
| 6174 | 3/23/2015 | $116.42 |
| 6210 | 5/1/2015 | $106.42 |
| 6251 | 5/26/2015 | $106.41 |
| 6277 | 6/15/2015 | $106.42 |
| 6299 | 7/20/2015 | $106.41 |
| 6355 | 9/11/2015 | $116.42 |
| 6448 | 11/23/2015 | $106.41 |
| 6489 | 12/22/2015 | $101.42 |
| 6528 | 1/28/2016 | $121.42 |
| 6571 | 2/29/2016 | $101.42 |
| 6642 | 4/22/2016 | $106.42 |
| 6672 | 5/18/2016 | $106.41 |
| 6708 | 6/27/2016 | $106.42 |
| 6725 | 8/1/2016 | $121.41 |
| 6740 | 8/19/2016 | $121.41 |
| 6777 | 9/28/2016 | $121.42 |
| 6811 | 11/9/2016 | $121.42 |
| 7106 | 8/2/2017 | $106.41 |

(the "Nationwide Transfers For Jewelry and Furs").

**COUNT IX:  AVOIDANCE OF FOUR-YEAR NATIONWIDE TRANSFERS FOR**

## JEWELRY AND FURSUNDER O.C.G.A.
### §18-2-70 et seq. and 11 U.S.C. §544

84.

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 83 herein and the same are incorporated in Count IX by this reference.

85.

During the four-year period prior to the Filing Date, the Debtor made premium payments to Nationwide for the Jewelry and Furs Policy in the total amount of $2,527.57.

86.

At the time of the Nationwide Transfers For Jewelry and Furs, the Debtor was insolvent.

87.

Debtor made the Nationwide Transfers For Jewelry and Furs with actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)     The Nationwide Transfers For Jewelry and Furs were made to conceal assets of the Debtor;

(b)     Through Nationwide, Debtor made the Nationwide Transfers For Jewelry and Furs, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)     Nationwide did not provide consideration to the Debtor for the Nationwide Transfers For Jewelry and Furs;

(d)     Descendant Trust also provided no consideration to the Debtor for the Nationwide Transfers For Jewelry and Furs; and

(e)     The Nationwide Transfers For Jewelry and Furs enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the Jewelry and Furs.

88.

The Debtor made the Nationwide Transfers For Jewelry and Furs without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Jewelry and Furs and at the time of the transfers, Debtor

(a)    was insolvent or became insolvent as a result of the transfers;

(b)    was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)    intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

89.

Transfers to Defendant Nationwide were for obligations of another entity.  Nationwide knew or should have known that the transfers were fraudulent as the Debtor claimed to not have ownership interest in the Jewelry and Furs.

90.

The Trustee has the standing of a creditor holding a judgment against the Debtor (11 U.S.C. §544(a)) and the Nationwide Transfers For Jewelry and Furs are voidable under  O.C.G.A. §18-2-74 (a) and (b) as transfers avoidable by creditors sharing the statutory standing of the Trustee (11 U.S.C. §544(b)).   The Nationwide Transfers For Jewelry and Furs are voidable pursuant to 11 U.S.C. §544 and the Georgia Uniform Avoidable Transactions Act codified at O.C.G.A. §18-2-70 et seq.  Defendant Nationwide is the transferee, such that the Plaintiff is entitled to recover the value of those transfers from Nationwide and from the Descendant Trust in an amount of at least $27,768.00 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

**COUNT X:  AVOIDANCE OF TWO-YEAR NATIONWIDE TRANSFERS FOR**

## JEWELRY AND FURS UNDER §548

91,

Plaintiff hereby reaffirms and realleges all matters set forth in Paragraphs 1 through 90 herein and the same are incorporated in Count X by this reference.

92.

During the two-year period prior to the Filing Date, the Debtor made premium payments to Nationwide for the Jewelry and Furs in the total amount of $349.25.

93.

At the time of the Nationwide Transfers For Jewelry and Furs, the Debtor was insolvent.

94.

Debtor made the Nationwide Transfers For Jewelry and Furswith actual intent to hinder, delay, or defraud Debtor's creditors. Evidence of Debtor's actual intent includes, without limitation, the following:

(a)    The Nationwide Transfers For Jewelry and Furs were made for the benefit of Descendant Trust which was a sham trust created to conceal assets of the Debtor;

(b)    Through Nationwide, Debtor made the Nationwide Transfers For Jewelry and Furs, yet maintained control of his funds while protecting those funds and property from his creditors;

(c)    Nationwide provided no consideration to the Debtor for the Nationwide Transfers For Jewelry and Furs;

(d)    Descendant Trust provided no consideration to the Debtor for the Nationwide Transfers For Jewelry and Furs; and

(e)    The Nationwide Transfers For Jewelry and Furs enabled Debtor to remove or conceal his own assets by converting them into assets outside the reach of his creditors, namely the Jewelry and Furs.

95.

The Debtor made the Nationwide Transfers For Jewelry and Furs without receiving a reasonably equivalent value in exchange for the Nationwide Transfers For Jewelry and Furs and at the time of the transfers, Debtor

(a)     was insolvent or became insolvent as a result of the transfers;

(b)     was engaged in business or a transaction or was about to engage in a business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or

(c)     intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

96.

The Nationwide Transfers For Jewelry and Furs made in the two-year period preceding the Petition Date are voidable pursuant to 11 U.S.C. §548. Defendant Nationwide is the initial transferee, or in the alternative as to certain of the transfers, Defendant Nationwide is the transferee, such that pursuant to 11 U.S.C. §550(a), the Plaintiff is entitled to recover the value of those transfers from Nationwide in an amount of at least $349.25 (or amounts to be determined with more certainty at trial), as well as pre-judgment interest from the date of the filing of this Complaint.

**Reservation Of Rights**

97.

The Trustee reserves the right to amend this Complaint pursuant to a requested accounting as well as other discovery should facts be discovered to justify the assertion of additional claims, including but not limited to any and all claims arising under Title 11, or applicable state law. This Adversary Proceeding is intended to address, and recover, all payments made to or for the benefit of the Defendants within the relevant time frames and the Defendants are on notice of the fact that this Complaint is not limited to the specific transactions described herein. To the extent that

Defendants may identify another beneficiary, Plaintiff will seek to amend this Complaint to recover same under 11 U.S.C. § 550.

WHEREFORE, Plaintiff prays that:

(a)     Process issue and all Defendants be served as provided by law;

(b)     Pursuant to Counts I and II herein, enter an order avoiding the Nationwide Transfers For Auto Policy and grant a judgment in favor of Plaintiff and against Nationwide and/or Phyllis Menser in an amount to be proven with more certainty at the trial of this matter, but not less than a total of $$9,530.99;

(c)     Pursuant to Count III and IV herein, enter an order avoiding the Nationwide Transfers For Garmon and grant a judgment in favor of Plaintiff and against Nationwide and/or Phyllis Menser in an amount to be proven with more certainty at the trial of this matter, but not less than a total of $10,984.92;

(d)     Pursuant to Counts V and VI herein, enter an order avoiding the Nationwide Transfers For 994 Burton and grant a judgment in favor of Plaintiff and against Nationwide, Phyllis Menser and Lot 710 in an amount to be proven with more certainty at the trial of this matter, but not less than $6,652.98;

(e)     Pursuant to Counts VII and VIII herein, enter an order avoiding the Nationwide Transfers For Brookview and grant a judgment in favor of Plaintiff and against Nationwide and/or Defendants Phyllis Menser and 1266 Moores Mill Road, LLC in an amount to be proven with more certainty at the trial of this matter, but not less than a total of $1,860.06;

(f)     Pursuant to Counts IX and X herein, enter an order avoiding the Nationwide

Transfers For Jewelry and Furs and grant a judgment in favor of Plaintiff and

against Nationwide in an amount to be proven with more certainty at the trial

of this matter, but not less than a total of $$2,527.57;

(g)     All costs be cast upon Defendants; and

(h)     For such other and further relief as is just and proper.

Respectfully submitted this 18th day of December, 2020.

**ROGERS LAW OFFICES**
*/s/ Beth E. Rogers*_____
Beth E. Rogers
Georgia Bar No. 612092
James F. F. Carroll
Georgia Bar No. 940350
100 Peachtree Street, Suite 1950
Atlanta, Georgia 30303
770.685.6320; 678.990.9959 (fax)
*Attorneys for Plaintiff*
