**IT IS ORDERED as set forth below:**

**Date: September 30, 2021**

Jeffery W. Cavender
U.S. Bankruptcy Court Judge

---

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-65681-JWC |
| CHARLES D. MENSER, JR., | CHAPTER 7 |
| Debtor. | |
| EDWIN K. PALMER, as Chapter 7 Trustee of the Estate of Charles D. Menser, Jr., | |
| Plaintiff, | |
| v. | ADV. PRO. NO. 20-6281-JWC |
| NATIONWIDE MUTUAL INSURANCE COMPANY, PHYLLIS MENSER, 1266 MOORES MILL ROAD, LLC, and LOT 710, LLC, | |
| Defendants. | |

## Memorandum Opinion and Order

In the four years prior to filing bankruptcy, according to the Complaint in this adversary proceeding, Charles Menser, Jr. paid at least $31,556.22 to Nationwide Mutual Insurance

1

Company for premiums on six different property insurance policies.  Together, the six policies covered a car, three houses, jewelry, and furs.  When Menser filed bankruptcy, he claimed no ownership in the policies or the insured property.  Instead, Menser's wife, Phyllis, owns each insured asset, either directly or indirectly through defendant entities 1266 Moores Mill Road, LLC and Lot 710, LLC.  The Trustee of Menser's chapter 7 bankruptcy estate seeks to avoid the premium payments as fraudulent transfers.  The Trustee alleges the payments were actual fraudulent transfers as one part of a much larger scheme by which Menser sheltered substantial assets from his creditors.  The Trustee also alleges the payments were constructive fraudulent transfers because Menser did not own any of the assets insured, received no consideration for the premium payments, and was insolvent at the time of each payment.  The Trustee seeks recovery from Nationwide as the initial or subsequent transferee of the premium payments.  Nationwide moves the Court to dismiss the complaint because it fails to allege facts to state a claim for relief and because it is a shotgun pleading.  For the reasons that follow, Nationwide's motion will be denied.

## I.  PROCEDURAL BACKGROUND

Menser filed his bankruptcy case on September 19, 2018.  The Trustee filed a Complaint (Doc. No. 1) initiating this Adversary Proceeding on December 18, 2020,[1] asserting ten Counts against Nationwide.[2]  Five counts seek to avoid premium payments to Nationwide under the Georgia Uniform Fraudulent Transfer Act ("GUFTA") through the Trustee's strong-arm powers

---

[1] The Court extended the time for the Trustee to file avoidance actions under § 546 to December 18 by Order entered in the main bankruptcy case on September 18, 2020.

[2] The Trustee also seeks recovery from Phyllis Menser and the two LLC defendants as the parties for whose benefit the premium payments were made, but those parties have not sought dismissal, and the Court focuses on the Complaint as it relates to Nationwide.

under § 544 of the Bankruptcy Code.[3]  Five counts seek to avoid premium payments to Nationwide under § 548 of the Bankruptcy Code.  Nationwide timely filed its Motion to Dismiss Complaint (Doc. No. 8) (the "Motion to Dismiss") seeking dismissal of all ten counts against it with prejudice under Federal Rule 12(b)(6), applicable through Bankruptcy Rule 7012.  The Trustee opposes dismissal.

## II.  JURISDICTION

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## III.  STANDARD OF REVIEW

Dismissal under Federal Rule 12(b)(6) is appropriate if the Complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule normally is construed with Federal Rule 8(a), which provides the "normal" pleading standard that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and

---

[3] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, unless otherwise specified.  All references to a "Federal Rule" are to the Federal Rules of Civil Procedure.  All references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

3

common sense." *Iqbal*, 556 U.S. at 679.

In cases of fraud, Federal Rule 9(b) provides a "heightened" pleading standard requiring allegations of fraud to be pled with particularity, but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Court restricts its inquiry to the legal feasibility of the allegations in the complaint and whether they set forth facts as opposed to labels or mere conclusory statements when considering a motion to dismiss. *See Howell v. U.S. Foods (In re Bilbo)*, 2014 WL 689097, at *3 (Bankr. N.D. Ga. Feb. 5, 2014) (citing *Iqbal*, 556 U.S. at 678). After determining which allegations in a complaint are well-pled facts and which are legal conclusions, a court must accept all well-pled facts as true and must construe those facts and the complaint in the light most favorable to the plaintiff. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1324 (11th Cir. 2017); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017).

## IV. FACTUAL ALLEGATIONS

The following facts are taken from the Complaint and accepted as true for purposes of the Motion to Dismiss.

After selling up to 47 Waffle House locations in Arkansas, Charles Menser, Jr. ("Debtor" or "Menser") moved to Atlanta in 1979. The profits from the sale of restaurants became the source of funding for many related entities, trusts, and family members and their businesses over the years. Directly or through at least fifty interrelated entities that Menser owned or controlled directly or indirectly, Menser transferred millions of dollars worth of assets to or for the benefit of his wife, other family members, and the interrelated entities. The Complaint alleges this network of entities and transfers was constructed with the intent to hinder, delay, and defraud Menser's creditors, leaving ownership of valuable real estate and other significant assets with people,

4

entities, and trusts *de facto* owned by and/or controlled by Menser, but also leaving Menser individually with virtually no assets and over $3 million of debt at the time he filed bankruptcy. The Complaint further alleges this large network of entities, trusts, and transfers, including Menser's own funds, evidence a pattern and practice of concealment and obfuscation, reveal a fraudulent intent, and allow Menser to enjoy the trappings of a lifestyle funded by the wealth hidden in his elaborate scheme while leaving his own creditors unpaid. The Complaint states that further details of this network and transfers will be detailed in a different adversary proceeding not filed as of the date of the Complaint.

The Complaint sets out in detail five groups of check payments to Nationwide. Each payment group relates to specific policies covering specific insured assets and includes the check number, date, and amount of each check. In total, the Complaint sets out several dozen payments from October 2014 to January 2018 totaling $31,556.22. The Complaint alleges Menser did not own any of the insured assets. Instead, each insured asset was owned by Menser's wife, Phyllis, or one of the two LLC defendants, which are 99% owned by Phyllis. The Complaint alleges Menser was the named insured on some of the policies, but not all, and it does not specify which policies. Menser claimed no interest in any insurance policies in his bankruptcy schedules. His only scheduled assets of value were a car, $200 in cash, and exempt household goods and furnishings. The Complaint alleges payments to Nationwide for policies covering assets not owned by Menser were part of his larger scheme to shelter assets in the name of his wife and other entities while maintaining control of those assets and benefitting from their value. The Complaint also makes several allegations regarding Menser's financial condition and insolvency that are discussed in more detail below.

V. **CONCLUSIONS OF LAW**

The Trustee asserts actual fraudulent transfer claims and constructive fraudulent transfer claims under both O.C.G.A. § 18-2-70 (GUFTA) and § 548 of the Bankruptcy Code, but the analysis is substantially the same under either statute. *Trauner v. Delta Air Lines, Inc. (In re Think Retail Sols., LLC)*, No. 17-ap-5078, 2019 WL 2912717 at *11, *15 (Bankr. N.D. Ga. July 5, 2019); *Wessinger v. Spivey (In re Galbreath)*, No. 00-ap-6017, 2002 Bankr. LEXIS 2115, at *6 (Bankr. S.D. Ga. Nov. 4, 2002). Nationwide asserts the Complaint fails to adequately plead either actual or constructive fraudulent transfer claims. The Court addresses Nationwide's arguments in turn.

A. **Actual Fraudulent Transfers**

To state a claim for an actual fraudulent transfer, the Trustee must show Debtor had an "actual intent to hinder, delay, or defraud" creditors. *Trauner*, 2019 WL 2912717, at *12. Because direct proof of fraudulent intent is rarely available, actual fraudulent transfer claims are often analyzed using the familiar "badges of fraud" to determine whether a transfer was made with the requisite fraudulent intent. *Id*. Georgia's fraudulent transfer statute sets out a list of non-exclusive badges of fraud to consider:

> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) The transfer was of substantially all the debtor's assets;
>
> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets;
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

6

> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-74(b). The factors analyzed under § 548 of the Bankruptcy Code are similar and, likewise, are not exclusive. "'There is no magic formulation' in considering the badges of fraud— '[o]ne badge may be enough; many badges may not be enough.'" *U.S. Cap. Funding VI, LTD v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d. 1340, 1369 (S.D. Ga. 2015).

Nationwide argues the heightened pleading standards of Federal Rule 9 apply to actual fraudulent transfer claims, citing *Kipperman v. Onex Corp.*, No. 05-cv-1242, 2006 U.S. Dist. LEXIS 96944, at *41 (Bankr. N.D. Ga. Sept. 15, 2006) (dismissing actual fraudulent transfer claims for failure to satisfy Federal Rule 9 because specific dates of transfers were not pled) and *Mukamal v. Am. Express Co. (In re Arrow Air, Inc.)*, No. 12-ap-1710, 2012 Bankr. LEXIS 5771, at *8-9 (Bankr. S.D. Fla. Dec. 12, 2012). This point, often cited by defendants in fraudulent transfer cases, is not uniformly held by courts and is far from clear for claims under GUFTA. *See U.S. Cap. Funding VI, LTD v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d. 1340, 1369 (S.D. Ga. 2015) (Federal Rule 9 not applicable to fraudulent conveyance claims under GUFTA). Regardless, whether courts apply Federal Rules 8 or Federal Rule 9 to actual fraudulent transfer claims, the analysis is substantively the same: has the Trustee pled enough facts supporting the badges of fraud to state a plausible claim for fraudulent intent? *Compare In re Arrow Air, Inc.*, 2012 Bankr. LEXIS at *12-13 (applying Federal Rule 9 to actual fraud claims but finding "the Complaint must particularly allege facts supporting badges of Arrow's fraud) *with Patterson Bankshares*, 137 F. Supp.3d at 1368-70 (applying Federal Rule 8 to GUFTA claims and similarly analyzing whether

the complaint pled badges of fraud and finding the result would be the same under Federal Rule 9).

Nationwide argues the Complaint does little more than plead in each count the bare conclusory statement that "Debtor made the [specific transfers] with actual intent to hinder, delay, or defraud creditors," *see, e.g.*, Compl. ¶ 23, followed by allegations that do nothing more than mirror several badges of fraud. *E.g.*, ¶ 23(b). The Court disagrees. An allegation is not conclusory if other factual allegations support the statement. Nationwide latches on to individual allegations that, when considered in isolation, might be conclusory, but ignores other allegations supporting the statements.

Nationwide then focuses on three specific badges—debtor retaining control of assets transferred, adequacy of consideration, and whether the transfer used substantially all the debtor's assets—and argues the allegations in the Complaint do not adequately plead facts to show these badges. But there is no magic formula when it comes to the badges of fraud. The three badges discussed by Nationwide are not the only relevant badges, and the Court disagrees with Nationwide's contention that the Complaint fails to plead facts supporting the retention of control and adequacy of consideration badges.

The Court finds the Complaint pleads enough facts to support the existence of the following badges of fraud:

Badge 1: The transfer or obligation was to an insider. While the payments to Nationwide were not directly to an insider, the facts pled support the Trustee's allegations that the payments to Nationwide were for the benefit of an insider—Menser's wife.

Badge 4: Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. The Complaint alleges Menser was sued in 2017. Though many

transfers occurred before 2017, at least some of the transfers occurred after that suit.  Nationwide argues the payments were largely monthly premium payments on a set schedule, which runs contrary to a fraudulent intent.  This may be true, but all inferences are drawn in favor of the Trustee for purposes of the Motion to Dismiss.

Badge 7:  The debtor removed or concealed assets.  The Complaint alleges Menser was concealing substantial assets from his creditors by holding them in the name of his wife (and others), and that his payments on the policies from his personal funds was done in furtherance of this concealment.

Badge 8:  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.  This factor will be discussed below in connection with the constructive fraudulent transfer claim, but the Complaint alleges Menser did not receive reasonably equivalent value for the policy premiums because he did not own the assets insured and later disclaimed any ownership interest in the policies in his bankruptcy schedules.[4]  These allegations are sufficient at this stage to support this badge of fraud.

Badge 9:  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.  As will be discussed below, the Complaint makes sufficient allegations about Menser's financial condition during the time of the transfers to state a plausible claim that he was insolvent at the time of the transfers.

---

[4] The Complaint is a little vague on who the named insured was on the various policies and whether the policies still existed as of the petition date.  There are some allegations that Menser was named on at least some of the policies, but the Complaint does not clarify which policies.  Further, many of the payments all occurred and then ceased long before the petition date, which suggests the policies had expired by the petition date.  Nationwide states Menser was a named insured on all but one of the policies and that many had expired before the petition date.  While these facts, if true, may support Nationwide's arguments later in the case, the ownership of the policies and related value to Menser as owner are issues of fact.

In addition, badge 2—debtor retained possession or control of the property transferred—is not directly implicated as written in the Georgia statute because Menser did not retain control of the premium payments, but the Complaint alleges enough facts to support the Trustee's position that Menser was paying for the insurance as part of a scheme to shelter assets from his creditors while maintaining control of the assets. Thus, this badge is indirectly implicated by the Complaint.

The above badges are adequately pled to state plausible claims for actual fraudulent transfers.

### B.     Constructive Fraudulent Transfers

To state a claim for constructive fraudulent transfer, the Trustee must show Menser made a transfer of his property for which he

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)
> > (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured…

11. U.S.C. § 548. The requirements under GUFTA are substantially similar, except GUFTA has a four-year look back period compared to the two-year look back period under § 548. Nationwide asserts the Complaint fails to plead adequately Menser's insolvency or that he received less than a reasonably equivalent value.

10

### 1. **Insolvency**

As part of his constructive fraud claims, the Trustee must prove Debtor either (1) was insolvent at the time of each transfer or became insolvent because of the transfer, (2) was left with insufficient capital after the transfer to operate his business, or (3) intended to incur debt "which was beyond [his] ability to repay." *Mann v. Brown (In re Knight)*, 473 B.R. 847, 849-50 (Bankr. N.D. Ga. 2012). The Bankruptcy Code defines insolvency as "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32). While the Trustee need not prove insolvency in his pleadings, he must allege enough facts to raise a plausible claim that Menser was insolvent on the date of each transfer. *Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 752 (Bankr. E.D.N.C. 2009); *see also Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (plaintiff presented "no information on the Debtors' financial status"); *Springel,* 2013 Bankr. LEXIS 1786, at *22-23 ("Similarly, to adequately plead insolvency, the Trustee must present some information of [a party's] financial status at the time of the Transfers.")

Nationwide asserts the Trustee has not alleged sufficient facts to show Menser was insolvent as of the date of each transfer because the Complaint fails to include any allegations about Menser's assets prior to the petition date. The Trustee cites paragraphs 13, 22, 39, 45, 52, and others to argue he sufficiently pled Menser was insolvent at the time of each transfer.

Most of the relevant insolvency allegations appear in paragraphs 13 and 22. All other paragraphs cited by the Trustee either repeat those two paragraphs, *e.g.*, ¶ 30, or offer conclusory statements that Debtor was insolvent at the time of transfers. *E.g.*, ¶¶ 39 and 40. Paragraphs 13 and 22 allege facts that Menser incurred significant debt beginning as early as 2012. Nationwide,

11

however, makes a valid point that allegations about Menser's assets during the same period are scant, and the Complaint generally relies on a lack of assets on the petition date to support its insolvency allegations. For instance, paragraph 13 begins by alleging, "All of the Debtor's transfers occurred at a time when he was insolvent or became insolvent as a result, *as evidenced* by his report of virtually no assets *on the Petition Date*." (emphasis added). The paragraph ends, "[t]he Debtor did not have sufficient assets in his name to even come close to the amount of his debts during the preference period." Similarly, paragraph 22 begins by alleging, "[a]t the time of the Nationwide Transfers for Auto Policy, the Debtor was insolvent due to the sum of the Debtor's debts far exceeding the sum of the Debtor's property," but further down it repeats, verbatim, the first sentence of paragraph 13, which relies on the petition date assets as evidence of insolvency. Paragraph 22 later concludes, "[t]he Debtor listed only nominal assets in a no-asset Chapter 7 bankruptcy, and did not have sufficient assets in his name to satisfy the above claims during the time period of the Nationwide Transfers For Auto Policy." The Court agrees with Nationwide that allegations of Menser's assets on the petition date do not adequately plead insolvency at the time of each transfer, which go back to October 2014. Further, conclusory statements that Menser was insolvent at the time of each transfer do not satisfy pleading standards under *Iqbal* and *Twombly*.

The Complaint, however, contains other allegations about Menser's assets and financial condition in the years prior to his bankruptcy that at least relate to insolvency and support the Trustee's insolvency allegations. Both paragraph 13 and 22 allege Menser was liable on delinquent debts of nearly $3 million that were secured by properties he did not own. While the Complaint does not include any dates on these debts, the allegation supports the assertion that Menser had more debt than assets and the broader allegations that Menser maintained his affairs for many years in a way that kept assets out of his name despite a substantial personal debt load.

12

Both paragraphs 13 and 22 also allege that a criticized asset report from 2019 shows Menser's credit score declined after 2016 "because of past due amounts owed on a home equity line of credit, consistently late monthly mortgage payments between 2016 and 2017, and a downgrade of the mortgage on the Menser's current residence due to these issues and his 'inability to document cash flow.'"  While this allegation does not directly implicate Menser's "insolvency," as defined in § 101(32), it does support a conclusion that Debtor was not satisfying his obligations as they came due at some point in 2016.

It is a close call, but the Court finds the Trustee has alleged enough facts to raise a plausible case that Menser was insolvent or unable to pay his debts as they came due during the period covered by the transfers.  The allegations may not be enough to satisfy the Trustee's ultimate burden at trial to establish insolvency, particularly for the older transfers, but they are more than an unadorned recitation of the insolvency element and state a plausible case for insolvency during the time of the transfers at issue in this case.

### 2.      **Reasonably Equivalent Value**

To plead a lack of reasonably equivalent value 'the plaintiff must present some information about the value the debtor received in exchange for the transfer.'"  *Official Comm. Of Unsecured Creditors of Wash. Mut., Inc. v. Corcoran (In re Wash. Mut., Inc.),* No. 10-ap-53158, 2013 Bankr. LEXIS 2885, at *16 (Bankr. Del. 2013); *see also Springel,* 2013 Bankr. LEXIS 1786, at *22 ("To plead lack of reasonably equivalent value exchanged sufficiently, therefore, the Trustee must present some information of the value of what New ICC received in exchange for the Transfers.

13

The Complaint fails to do so."). It is insufficient to simply allege the statutory elements of a constructive fraud claim. *Global Link Liquidating Trust,* 327 B.R. at 717.

Nationwide argues the Complaint's value allegations are conclusory because there are no facts about the value provided by the policies other than allegations that the value benefitted Menser's wife and the Entity Defendants. Nationwide further argues it did give value to Menser because it provided a service—insurance coverage—at market rates. Nationwide finally argues the Trustee cannot assert Menser did not receive value because he is simultaneously alleging in a different adversary proceeding the insured assets are *de facto* assets of Menser.

The Court disagrees with Nationwide's position that the Trustee's allegations on value are conclusory. The Complaint alleges Menser did not own any of the insured assets and the benefit of coverage flowed to Menser's wife and the Entity Defendants owning the insured properties. The Court finds these facts sufficient to state a plausible claim for lack of reasonably equivalent value. Nationwide's arguments about the value that flowed to Menser as purchaser (and perhaps named insured) are questions of fact not to be decided on a motion to dismiss. *See In re Wash. Mut., Inc.,* 2013 Bankr. LEXIS at *18 (finding that even conclusory statement about value of certain provisions in contract was enough to raise issue of fact for trial).

Nationwide further argues the Trustee cannot claim Menser received no value for the insurance policies while also arguing Menser was the *de facto* owner of the insured assets in a separate adversary proceeding. This argument has merit if the Trustee proves successful on his claims in the other adversary proceeding. The Trustee cannot have the Court declare the insured assets are Menser's assets and also recover a constructive fraudulent conveyance claim based on an argument the insured assets are not Menser's. But until the Trustee proves successful on his

14

claims in the other adversary proceeding, the Court will not preclude the Trustee from seeking a recovery of a fraudulent transfer in the alternative.

### C. Shotgun Pleading

Nationwide argues the Complaint is an impermissible shotgun pleading and should be dismissed. The Court disagrees. The Complaint contains several general allegations that could fairly be said to apply to all Counts. The Complaint then goes through 5 specific groups of transfers organized by policy and gives the check number, date, and dollar amount of each transfer and alleges two counts, one under GUFTA and one under § 548, for each of the five policy groups. To be sure, there are unnecessary repetitions of allegations making the Complaint longer than needed, the Complaint has a few stray allegations here and there the Court finds confusing,[5] and the Complaint commits the "mortal sin" of incorporating all previous allegations into each successive Count, but Nationwide makes no persuasive argument that "a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland v. Palm Beach City. Sheriff*, 792 F.3d 1313, 1324 (11th Cir. 2015). In essence, Nationwide argues the Complaint could be drafted better, not that it cannot respond to the claims alleged. Further, the remedy for shotgun pleadings is not dismissal with prejudice as requested by Nationwide, but to strike or dismiss the complaint with leave to amend. An amended complaint in this case, however, would likely lead to little more than an amendment to the first paragraph of each count so that fewer previous allegations are incorporated, and perhaps a few deletions of repetitive paragraphs. The Court does not believe requiring such an amendment would materially advance this adversary proceeding.

---

[5] For instance, paragraph 48 references "Defendant Gross," and paragraph 16 alleges Menser made certain payments to Nationwide by writing checks to "Gross, who in turn wrote checks in identical amounts directly to Nationwide." The Complaint, however, does not name anyone named Gross as a defendant or provide any explanation of who Gross is. Nationwide, however, does not address this issue in its Motion to Dismiss.

15

### D. Allegations of Nationwide's Bad Faith

Finally, Nationwide argues that the allegations about its bad faith are unsubstantiated and inflammatory and do not support a finding of bad faith. This is an issue of fact not appropriate for a motion to dismiss, and it is not clear what relief Nationwide seeks in connection with these allegations. Nationwide can deny the allegations in its answer.

## VI. CONCLUSION

The Complaint adequately alleges facts supporting Menser's badges of fraud to state a claim for actual fraudulent transfers. The Complaint alleges just enough facts to raise a plausible claim that Menser was insolvent at the time of the transfers, and that he did not receive a reasonably equivalent value in exchange, to state a claim for constructive fraudulent transfers. Though the Complaint has issues, including the incorporation of all previous allegations in each successive count, it is clear enough to allow Nationwide to understand the factual allegations relevant to each count, and any required amendment would elevate form over substance. Accordingly,

**IT IS ORDERED** the Motion to Dismiss is DENIED.

The Clerk is directed to serve a copy of this order on all counsel of record in this adversary proceeding and on any unrepresented party.

END OF DOCUMENT